Roderick Wright on behalf of appellate Brandon Tate. Brandon Tate received one sentence, one, for his 2005 convictions. Now, the district court read into Mr. Tate's judgment that he received a sentence on each of the counts listed. That is not contained within the four corners of that document. The decision in this case, with regard to that issue, we would read as follows. It reads simply, the plain language of 4A1.1E requires that there be multiple sentences. It states in the plain language that a case where a defendant receives two or more sentences. And here, that is simply not the case. And that is what we have to first establish before we go forward because that's intertwined with the prosecutor's breach of that plea agreement. Well, the problem here is you can't appeal the sentence because you entered into a plea waiver. So, now you're, it's a very interesting argument. I'll give you a correct legal sentence as opposed to the legal applicable guideline. What is correct? What the district judge says? What is correct is what is actually true. What the truth of the proper application is. Now, again, we have to get to the prosecutorial's duty in order to, the prosecutor took on a duty. They didn't have to take on that duty. They took on a duty to make a recommendation at the low end of the applicable guideline range. When they take on that duty, we're asking them to impose the low end of what is the true applicable guideline range. The court can make an error. The prosecutors don't just defer to the court. Just when we go through the pre-sentence process, the defendant has a right to make objections to the pre-sentence report. The prosecutor has a right to make objections to the pre-sentence report. There's not just deference to the court on that. The prosecutor, in evaluating that, could have made a recommendation. And I agree with you. If the district court had simply said, I disagree with you, prosecutor. I disagree with you. This is the sentence I'm going to impose. The defendant has waived the right to directly attack that. But what we're attacking is not just what the court did directly, but what the prosecutor's obligation was. What in the record can lead us to the conclusion that they intentionally misrepresented? They intentionally did what they did. Maybe they made the error. What's in the record is, initially with the pre-sentence report, the defendant made an objection to that. That there was only one sentence. The defendant laid that out clearly in the original objections to the pre-sentence report. The defendant went further and remade that argument again in the sentencing memorandum filed prior to the sentencing hearing. The defendant again proceeded with that argument during the sentencing hearing. And in fact, during the sentencing hearing, the judge said, well, I read this judgment as follows, which was saying that he applied the 71 to 95 month sentence to each charge. After the court made that ruling, defense counsel then again asked to address the court and discuss the document, the judgment the judge was referring to. Defense counsel pointed out, and the prosecutor, of course, is present in arguing during all of this, that the judge's ruling is actually impossible under North Carolina law. Now, in federal court and district court, certainly, typically, you list this charge, this is the sentence, this charge, this is the sentence, this charge, this is the sentence, and then the judge can combine those and then maybe add on something like a 924C or such when it's appropriate. That's not how it works in North Carolina state court. The judge in North Carolina issued one sentence. We pointed out the common law robbery because North Carolina has a structured sentencing scheme such as what used to be mandatory federal guidelines. The judge's reading is impossible under North Carolina law, and we addressed the common law robbery because as a Class G felony, not a Class D felony like the armed robberies, the sentence that the court, the district court, was reading into each case could not possibly be the sentence on the common law robbery. So the judge's reading was impossible. The prosecutor was present during all of this. They heard all the arguments. The prosecutor had an obligation to recommend a sentence at the low end of the applicable range. The applicable range was the bottom of that was 46 months. The prosecutor didn't do that. So by not fulfilling their obligation, regardless of what the court did, they breached the plea agreement by committing prosecutorial misconduct by not following the recommendation that the defendant agreed to. That is the only benefit. A lot of times that's the only benefit of the bargain that the defendant gets by pleading guilty is that recommendation. The defendant can plead guilty without a plea agreement and still get his two levels for acceptance and additional level for time of notification. Often cases, the only additional benefit the defendant gets for entering into a written plea agreement is agreements such as this where the prosecutor recommends a sentence at the low end. Here the defendant, again, because of the district court's error in looking at the judgment and error in reading something into the judgment that's not within the four corners, the defendant was denied his benefit of the bargain. The prosecutor could have simply made the recommendation. Yeah, but Mr. Wright, how can an applicable guideline range be anything other than what the district court determines is applicable? In other words, maybe the court erred in applying the guidelines, but to say that the prosecutor breached an agreement, I mean, the applicable guideline is what the court says it is until it's found to be erroneous, isn't it? Well, Your Honor, the court has a duty to determine the applicable guideline range. The court determined what it felt was the applicable guideline range. And the prosecutor took on a duty in the written plea agreement in the contract to recommend a sentence at the low end or the lowest end, I think, actually, of the applicable guideline range. They didn't have to accept that duty. If they didn't have that duty in the plea agreement, then they would have no obligation to do that. So are you saying that the prosecutor was obligated to tell the judge that the judge's reading was erroneous? Yes. Is that what you're saying? Yes, to make their recommendation. The court could have ignored it. The court could have pushed it to the side, and the government would have still fulfilled their part of the bargain. So the court could have overruled it. The guideline recommendations, this was not a binding plea. The court could have sentenced as it chose to, even despite the government's recommendation. But the government had an obligation of a contract with my client in order to make that recommendation. And then whatever the court did, the court did. If they recommended it, the court said, no, this is how I read it. We're not here. The government should have joined you in the truth. Correct. Right. Because otherwise we'd make an error, applicable error. Applicable guidelines would be erroneous. You could do anything to be applicable. That is exactly, and that's the extent of, that's the argument. And furthermore, too, we go by contract law, right? Yes, and this well-settled law, how that's viewed in relation to the government, and more strictly in criminal law than in a civil administrative case. So I'm not going to waste the court's time, but, yes, that's essentially the gist of this. We have to get it right, and the government has an interest in getting it right, and they should want to get it right. I'll yield the remainder of my time. Thank you. Mr. Enright? Why don't you just correct me? Good morning, Your Honor. May it please the Court. I'm sorry. I didn't hear you. Why don't you just correct the sentence? Well, Your Honor, we don't believe that the sentence was erroneous in the first instance, and in the second instance I would mention that the sentence was erroneous. I would mention that this was not a situation where the defense attorney called us once we stood up and said, pursuant to the plea agreement, we recommend a sentence at the low end of the guideline range, and said, oh, I think we had a misunderstanding about what this agreement meant. During the proceedings in the district court, the attorney who negotiated the plea agreement and represented the defendant at sentencing said nothing about this. At no time, even though given the opportunity to object, did he say, oh, no, the government breached the plea agreement here. That's an issue that he raised for the first time on appeal, and I'm happy to, of course, talk about why I don't believe he did. Tell us why. Why is it not incorrect? Well, the plain language of the guideline provision requires the district court to add one point for each prior sentence resulting from a conviction of a crime of violence that did not receive any points under the subsections above it because such sentence was counted as a single sentence. Here Mr. Tate had a total of five convictions for a crime of violence, and four of those. In North Carolina? I'm sorry, Your Honor? In North Carolina? The North Carolina one, right? In North Carolina, yes. They were part of a consolidated sentence. Five that they were not consolidated sentences. North Carolina does it very differently. They first consolidated the offense into one, and they had one conviction and one sentence. Your Honor, I don't believe so, Your Honor. I believe what we have in this case is North Carolina, they're not consolidated, it's one conviction. And the highest one was the robbery with the dangerous weapon, wasn't it? Did we explain that in United States v. Davis that it's a single sentence under North Carolina law? I think Judge Keenan and Judge Gregory are saying slightly different things. I think the Davis decision did hold in no uncertain terms that there is a single sentence, but there remain multiple convictions. He was convicted. We said that when a North Carolina court consolidates offenses for judgment, the outcome is a single judgment for which the length of the sentence is controlled by the maximum sentence for the most serious offense. Yes, Your Honor, I think that's correct. A single sentence. How then does this defendant get a total of three points when he received only one sentence under North Carolina law? Because, Your Honor, the provision allows that single sentence to receive additional points if it results from a conviction that was not counted above. And in this case, that is what happened. I do believe the consolidated sentencing scheme sustains multiple convictions but attaches only one judgment and only one sentence to those multiple convictions. Well, in this case, had the district court already applied three points? Yes, Your Honor, the district court had already applied three points. So how does he get to add extra points? Because the sentence counts again because it resulted from convictions that were not counted above because the sentence that resulted from those convictions was counted as a single sentence. That is a situation that Subsection E addresses, not to an unlimited extent, but up to three additional points. Here there were four additional points total, but since it was capped at three, he limited it to three. And so I think the district court got that issue right, but I would return to what I think is certainly the more important issue for our office. I mean, to go to Judge Floyd's. Are you saying that North Carolina didn't consolidate the offenses? They said that it did. Your Honor, North Carolina consolidated the offenses. Okay, what's consolidated the offenses? And when you do that, how many offenses are there? Five, Your Honor. No, no. When you consolidate the offenses, how many are left? I honestly believe that what happens is there's a single judgment. One. One. And the judgment is entered on a conviction on the one sentence left after consolidation. That's why it's an unusual sentencing structure, but that's North Carolina. I mean, federalism is good sometimes. People want federalism sometimes. They don't want federalism, but this is an example of it. And that is that they consolidate the offenses, and then the judgment is entered on one conviction, and then there is a sentence. How are you going to go back and unravel now? You're saying with North Carolina, we can go back and say, we're going to unravel the consolidated offenses and say that that was a sentence. There is no sentence on the other four. Your Honor, that is not what I'm saying. Absolutely, the Davis decision held in no uncertain terms. There is only one sentence. Okay, well, what other sentences do you go back that otherwise have not been accounted to to get the extra point? It is only one sentence. It's not another sentence. You're going back because it's one sentence for five different convictions, which are consolidated into a single judgment. No, the conviction is one judgment entered. A judgment of conviction on the consolidated offense. Yes, Your Honor. It's not a judgment that has five offenses now. It's consolidated into one. And then that judgment is entered of conviction, and then you sentence. You go back and say, man, there's several. That's what the consolidation is. That's what it means. Consolidate into one. I agree with that, Your Honor. You have five convictions. We're only going to sentence you on one. That's different. That's what you're talking about. Yes, Your Honor. But North Carolina doesn't do that. They consolidate the offenses. And then there's one offense, and there's a judgment of conviction on one offense, and then there's a sentence. That's different. I do think there are two different things. And I will certainly – I think if you go back and read Davis, that's what North Carolina is very – and you – go ahead. I obviously am not going to fight with Your Honor about the meaning of Davis. I have read it, and I – But see, if I understand what you're saying, you're relying on language in the guidelines for the count, not – Judge Gregory is correct. It's just one sentence. Yes, Your Honor. But the guideline language, I guess you argue, allows you to count convictions. The guideline sentence allows you to count convictions in a particular circumstance, and that's where you have one sentence that results in – Do you want that language? Sure. It's 4A1.1E. What does it say? Not the commentary, but the language itself. Add one point for each prior sentence resulting from a conviction of a crime of violence that did not receive any points above. So your position is Davis didn't overrule that? No, Your Honor. I think this is – Does it have to be a whole point? Did he get a third of a point? There's no provision for anything less than a whole point. I don't want to say the point I'm making, but, I mean, could he have gotten a fraction of a point in the initial computation? For a component of the sentence? Could he have gotten a fractional amount? I don't think so, Your Honor. I've never seen anything like that before,  I think that this language is designed to address a situation where you do have multiple convictions, and I take Judge Gregory's point. I mean, perhaps I'm misreading Davis. I've looked at that decision a few times before coming to court today, and what I had understood it to say was that you have a single sentence. I didn't understand the Davis decision to say anything about necessarily the number of convictions, but I've always understood the statute that Davis interprets that puts together the consolidated sentence doctrine to speak to say there's one sentence. It's not a concurrent sentences or consecutive sentences. It's just one sentence. But he still stands. He used the language, didn't we, in Davis, that when a North Carolina court consolidates offenses for judgment. So the language of Davis is suggesting that the offenses themselves are being consolidated, doesn't it? Perhaps, Your Honor. I'm just not sure, but that raises the question in my mind. I admit I have never – I don't believe this court, the district court, and I have not read it that way. I had certainly understood, and I think – Well, I suggest you take a more careful look at Davis, because it clearly says that the consolidation was of the offenses. But the – I believe the sentences can be consolidated for a judgment, and still you stand convicted of multiple convictions, multiple offenses. But you receive for those – collectively, those offenses, only one sentence. And I think that the language in Davis – I don't have the page site handy. The holding is that North Carolina consolidated sentence is a single sentence. And that was the issue in Davis, because under – what is it? 4A1.2A12, which is – But the language you read in terms of the sentences, did you say for prior sentences you can award those? I didn't hear you, Your Honor. You said for prior sentences, all prior sentences. Only for – Read the language you said that was applied to allow him extra points. Subsection 8. Subsection 8. Add one point for each prior sentence resulting from a conviction of a crime of violence that did not receive points. So each prior sentence. How many sentences? There was one sentence here. All right. So that's the first language you've got to get to, each prior. It doesn't – yes, each prior sentence. And here you do have a prior sentence that didn't receive points because it resulted from a conviction that did not – It did receive points. It received three points. I apologize, Your Honor. It's the crime – or it's the conviction that did not receive any points. The conviction of a crime of violence that did not receive any points, you add a point for the sentence that results from it. And a conviction has to be a judgment of the court, right? Yes, Your Honor. But if the judgment only had one offense and that was the single conviction, then there aren't multiple convictions. I agree with you that that is true. And I apologize that I suppose I don't have – you have stumped me. You have to know North Carolina law to do this, don't you? You do. And I thought I did, and perhaps I don't. But my understanding of North Carolina law was that you have, in a situation where you have a consolidated sentence for five convictions, you have each of those convictions. None of them are dismissed. There are still five convictions, but there's a single sentence. At the risk of sounding like a total nerd, doesn't it come down to how you diagram the sentence in subsection E for each prior sentence that did not receive any points under A? Resulting from a conviction of a crime of violence is a dependent clause, is it not? That – That each prior sentence to that – Modifies conviction. Yeah. You see? I do. I think the word that modifies conviction because it's closer to the word conviction, and if it didn't, then it would leave – I mean it would treat someone who's convicted of five crimes of violence the same way as someone who's convicted of one, and that's not really an accurate portrayal of criminal history. So I do think it makes more sense to interpret that to modify conviction than sentence. That doesn't get around necessarily the problem Judge Gregory mentioned. Right. But to the extent that a consolidated sentence is a single sentence resulting from multiple convictions, I do think it suggests that you count that sentence up to three points, again, for multiple convictions. Is that what you did? Pardon me, Your Honor? Is that what happened? Yes, Your Honor. The court awarded three points. There were four crimes of violence in addition to the one that was counted above the court awarded. It said there would be four points, but since the cap applies, he only gets three points. I do want to return to the question that Judge Floyd posed to opposing counsel, what evidence that the United States intentionally breached the plea agreement. Your Honor, I would say there's absolutely none. The United States certainly did not intentionally breach the plea agreement. Intentionality is not an element of breach in the contract. Oh, that's true, Your Honor. It's certainly not. And I don't think we breached it at all. Yes, we're under contract law. Yes, Your Honor, and I understand. If I made my house, I said I'm going to make my house available to you to paint the inside, but I forget all about it and then I go off to Europe for two weeks. I still could be in breach. I didn't make my home available for you to do it, but it had nothing to do with intent. That is correct. I want to emphasize there is no intent, but it's also not a breach. We'll go back to the surface, not a breach, because you think it really is the correct sentence? No, there's no breach here, even if the district court and we got it wrong under 4A1.1e. All right. Because the agreement was that there wouldn't be any right of appeal. It would be the district court, absent exceptional circumstances, the district court would be the only court determining the applicable guideline. So your argument then boils down to really the government did not agree that any particular range of sentence applied. That's correct, Your Honor. And we've only agreed that what was applicable. Correct. We would recommend the low range of what was applicable rather than a specific range. That language is in the plea agreement. That language is in the plea agreement, Your Honor. Paragraph 11. I don't know the paragraph off the top of my head. I can look it up. But I do believe it says, in no uncertain terms, the district court will decide what the applicable guideline range is. That's not the point. Everybody knows that the district court is going to decide it. The benefit that the defendant gets in thinking that you're in partnership with you is that he waives it to the extent that at least we say it's the applicable guideline that's going to cabin what at least was stated to the court. But here it wasn't the correct one. It wasn't stated to the court. And the court would ultimately say, I reject it. But you're supposed to help make sure at least the court has before it the correct one. That's the bargain, isn't it? Yes, Your Honor, and we did. But you didn't. Oh, I disagree, Your Honor. No, no, no. We're assuming. You keep your argument that it's correct. But assuming that it's wrong, you didn't keep that bargain. I would still disagree respectfully, Your Honor, because what we had, if we were wrong, is a good-faith disagreement about what the guidelines mean. And we agreed that the district court's there not to take our word for it. They're to make a decision as between two competing arguments. And the district court determines the applicable guideline range. That's true because that's the sentencing regime we have. The district court calculates it. And it's also true because our recommendation on a sentence comes before the district court pronounces the sentence. Why so important? Yes, Your Honor. So we couldn't wait until, for example, this court weighed in on its view of the district court's determination or the Supreme Court weighed in. That would be too late to affect the sentence. If that were how it was interpreted, we would have to say, Your Honor, we can't make it a recommendation until there's been an appeal and until this comes back. I'm saying this because this is what the guidelines require. It said that when it sentenced it. Yes, the district court said that the guidelines require a range of 57, 71 months, and we said that was wrong. For the sake of just this point. For the sake of argument, if that was wrong, then we had a good-faith dispute about it, and the district court resolved it in our favor. That's not supposed to be a good-faith dispute about it. That's an ambiguity, isn't it? In other words, you think it means, applicable means whatever the court says it is. Defense thinks that it means what the law says it must be. I don't believe so, Your Honor. Aren't you fighting over that? You're saying it's whatever the court gives you. Or however the court calculates it. The applicable guideline range is determined by the district court before sentencing, and so what the district court determines is. Whether it's right or wrong. Yeah, the district court is the court. They make the judgment. Well, that's an ambiguity because you could read it, and I think I would, that it means the one that's according to law. It means correct. I would read it that it means the correct one, not an erroneous one. Your Honor, we negotiate plea agreements with defendants often, and in the United States and throughout the country, there are plenty of plea agreements you can find in published decisions that say, we agree that the guideline range should be X, and that's what we're going to recommend to the district court. That is not what we did here. We negotiated something else. And I would also note that. What was the something else? We negotiated that we would recommend a sentence at the low end of the applicable guideline range, but we didn't negotiate or make an agreement about what we believe the low end of the guidelines. Well, we wanted to be the correct one? We would want it to be the correct one, Your Honor. And the correct one, isn't that up ends the whole point of a voluntary waiver? No, Your Honor, because we acknowledge that the way to determine the correct applicable guideline range is to make our arguments and allow the district court to make that determination. And if applicable, then have appellate review. But in this case, the defendant chose to waive his right to appeal and have the dispute settled by the district court as a final matter. That's an ambiguity in the contract. You read it that way. I don't believe so, Your Honor. It's a determination that we will allow the district court to make that determination. And it's a very common term. It's something I want to emphasize. We are asked by defense attorneys often, would you please agree when we are negotiating a plea agreement to recommend a sentence at the low end of the guidelines? And that's not something we're going to be able to do easily if this court were to find in favor of the defense on this issue, because very few AUSAs are willing to put their reputation for keeping their word on the line based on the possibility of a disagreement. You mean based on the law? You mean you can't be cabin by the law? I think they absolutely care about the law, but I think they also recognize that sometimes this court disagrees with them. And sometimes this court disagrees with the district court on what the law is. And I don't think they often want to put their reputation on the line, on the risk that this court might disagree with them or the district court. So they're not going to be very, they might be gun shy about agreeing to this term in the future. I see I don't have much more time. I don't understand your chicken little argument, but that's fine. Okay. Thank you. Thank you, Your Honor. Go ahead, Counsel. Very briefly, Your Honor. I've signed plea agreements and clients have signed plea agreements that say the applicable guideline range as determined by the court. That was not the terms of the agreement here. The defendant is seeking nothing special. He's seeking no special treatment. He's simply asking to receive the benefit of his bargain and that the judgment be correct. And that is all he's asking for. If the defendant wanted a particular guidelines range to be applied by the court, why didn't the defendant just say that guideline range up X months to X months? Respectfully, Judge Keenan, he didn't want a particular range. He wanted the right range. That's it. He wanted the correct calculation of the applicable guideline range. Nothing more, nothing less. I have nothing further. Thank you so much. We are going to ask the clerk to adjourn the court, sign a die, and then come down and greet counsel. This honorable court stands adjourned, sign a die. God save the United States and this honorable court.
judges: Roger L. Gregory, Barbara Milano Keenan, Henry F. Floyd